The case for argument is 20-1102, Colcraft Enterprises v. Artsana. Mr. Pizzuniac, whenever you're ready. Thank you, Your Honor. If it may please the Court, the first issue is claim construction, as the District Court used language in its claim construction which neither party had proposed, and that language expanded the meaning of the technical term, pivoting, or pivotably, far beyond the plain and ordinary meaning of the term, far beyond anything else. Are you talking about, this is Sharon Proust, are you talking about the word move? Yes, I am. Yes, I am. And is the, and to go directly, in claim 28, we have the language pivoting the leg into a stored position. The Court viewed the term pivoting as meaning, quote, rotate, turn, or move about a fixed point. As detailed in our opening brief, neither party had suggested the word move in interpreting the term pivoting. Mr. Pizzuniac, this is Judge Stoll. I have a, just a housekeeping question. You know, when I looked at the expert testimony underlying the judgment of infringement, I saw that the expert testimony used the word rotate in describing what the legs were doing. It didn't say move. So why, what is your basis for complaining about the District Court's use of the word move, when that's not even the basis for infringement here? I don't, do not believe that nearly because the expert used the word rotate, that it changed the facts, that the jury was instructed that they could find infringement if the leg moved about a fixed point. The jury would follow the Court's instruction, and even the jury had perfect right to disregard the expert's use of the word rotate, but it could not ignore the Court's instruction. So it could look at what the, look at the device that was shown to them and decide, okay, the legs are moving. So that comports with the Court's claim construction and, or jury instruction. And so they found infringement. What kind of movement about a pivoting point wouldn't be turning or rotating? Well the term move is a very generic term that means any change in location. So wasn't it movement about, move about? It wasn't just move. It was relative to movement about the pivot point. No, the language is move about a fixed point into a stored position. And the term, if you said rotate or turn about a fixed point, you would actually need something that, as the language says, you know, there's something like a pin or something about which something rotates or turns. When you say move and you look at the, you know, the images in our opening brief, you can have movement about a fixed point simply because you have legs that are tethered to the hub and they change location. And as soon as the legs change location, they move about a fixed point, even though they are not rotating or turning about the fixed point. Counsel, does the accused product use pins or shafts? The, Your Honor, there are two totally separate products. You have the first original product and the first redesign. In those cases, yes, there was, we admit there was pivoting at the hub, not at the legs, but at the hub. The second redesign, and the second redesign is, we have the images of that in the opening brief. One can refer the court to page 42, for example. In the second redesign, all you have is a leg that is pulled in and out of the hub, and once it's pulled out of the hub, it's attached by a tether, a flexible tether, a fabric. There is absolutely no… The legs may be coupled to the hub in any number of ways. So right after it discusses the possibility of pins or shafts, it then expressly indicates that there are other ways you could couple the legs to the hub. So why aren't your tethered straps fitting right within the patent's expectation of other ways? Because that is, the claim term is pivoting, not coupling. Just because the patent disclosure broadly refers to pivoting and then says, oh, you can also use other coupling, but then limits the claims to pivoting, the broader language in the specification is moot. We have to consider what did the specification identify by the term pivoting, and that's the issue here. So if I can continue, that the words pivoting or pivotably have to mean only rotating or that is the ordinary meaning of the term. The Artana submitted to the court dictionary definitions of the term pivoting. That was not disputed. The court looked at it. No dictionary… I guess I'd like to return to Judge Stoll's original point that she asked you about, which is when the district court added to the construction, move about a fixed point, what is it about that language that makes you believe that it does not continue to implore a rotating or turning? Because moving about a fixed point, I mean, I don't know how you move about a fixed point without having some aspect of turning or rotation. Well, the term move means any change of location. It's a very generic… But the term is not move. The term is move about a fixed point. So it's not just movement. It's movement relative to this fixed point. Yes, but then why add the word move? If you have a construction that says rotate, turn, or move, a jury would normally assume that the word move is something different than rotating and turning and could have a broader definition. So even if you say about a fixed point, and you take a look at the images of the structures we're talking about here, for example, page 42 of our opening brief, yeah, a jury could look at legs tethered by a… So what's the difference between rotating and turning? To the extent that you said move has to imply some difference, I don't know that I understand him as meaning to give three discrete and different examples so much as he was trying to articulate the meaning, and like I do very often with my children, repeat things over and over. Well, rotate means that you're turning. It's a specific way of turning in the sense that it implies something like the hands of a clock going rotating around the dial. Turning is a little bit broader because it doesn't require specific rotation, but it still requires something to be going into a left-right type direction. Move is now much broader than either rotating or turning, and it just means any change in location. So yeah, one could say rotate is somewhat unnecessary because turning around would assume, presumably, include rotating, but the term move is far broader than either one. So again, if you take a look at the images, a jury could very easily look at the hub, look at the legs tethered and say, okay, well, here's the hub. It's a fixed point, and these legs are moving around that. So I have reached my time limit. Yes. We'll reserve the remainder of your time for rebuttal. Let's hear from Mr. Narao, please. Thank you, Your Honor. May it please the court. I think everything is well covered in our brief, so I'll just highlight a few main points. Seventh Circuit law applies for the J-Mall and new trial standard, and as the district judge noted in his post-trial opinion, it's a very high standard in the Seventh Circuit for a new trial. It can only be granted if there's a miscarriage of justice or it shocks the conscience or cries out to be overturned. And a $3.2 million verdict on $46 million of infringing sales is not shocking to the conscience. In fact, appellant made a 23% profit margin on the infringing products, so at a 7% royalty, they still were handsomely profited from the willful infringement here. The second point is that the district judge was really in the best position to determine J-Mall or a new trial if it was warranted. This was a highly visual trial. We were fortunate to have all of the products in the courtroom. A lot of cases, you're not able to do that. So we had the physical products there, and the witnesses testified our expert assessment. Okay. Hey, counsel, I think we kind of know what the standards of review are. Why don't you actually address the claim construction since that's a de novo question of law? Sure. Absolutely. Now, as your honor said, the terms rotate, turn, or move are three ways of saying the same thing when you look at the district court's construction in the context of these claims. And especially if you look at claim 28, it says pivoting the leg into a stored position. So when you say moving a leg about a fixed point to get the leg into the stored position, that's going from figure three of the patent to figure four, where the legs are all parallel to each other. So it's not just any kind of movement. It would be moving the leg about a fixed point to go from figure three to figure four, which is exactly what all of the accused products do. Now, Mr. Pezzuniac was not at the trial, so I don't fault him for this, but nowhere was it argued that moving was how we were presenting the case. Everything was from our expert witness to the opening statement to the closing argument dealt with rotating about a fixed point. So movement had nothing to do with this case. It wasn't argued to the jury, and you have to assume the jury followed the evidence. The other thing is, they say the term move came out of thin air, but the judge actually was relying on the dictionary definition, which gave an example of a quarterback pivoting to hand the ball off to a running back, and the dictionary said that that was movement about a fixed point. Because this is extrinsic evidence that the judge was considering, I don't believe this is de novo, but rather abuse of discretion for considering extrinsic evidence, which the judge was just applying the straight dictionary. There was no magic. I think they said it was like impossible to know where this came from or it came out of thin air. It was right from the dictionary. The appellant never raised this issue with the district court, never said, judge, you added the term move in there. We think that was a mistake. And especially here, you had two separate claim constructions at two separate times because the patent was in re-examination, so claim 20 came out of the re-exam with no amendments. It was simply changed from dependent to independent form. And the appellant said that they were fine with the judge's earlier construction of pivoting. They never, and they had a full opportunity to do so both in briefing, you know, in extensive briefing on this, they could have complained about movement and they didn't. So I hope that answers the question on the claim construction. Anything further? I would just touch on damages briefly. This was not a runaway jury by any means, 3.2 million damage on 46 million in sales. And the royalty rate was exactly 7%. The jury calculated damages to the penny. The judge in his post-trial ruling actually said the evidence would support a verdict of 7.7%. So the judge found the evidence actually would allow a higher verdict than what we got. And our expert on damages went through in extensive detail how he applied the apportionment or value of the patented invention. And there were several factors that went into that. The testimony of our president that the reason people are buying this product is because of the patented features. This was the first and only product in the marketplace where you could use a play gym with the play yard and then also use it separately with a mat. So if you're going from, say, the child's bedroom to in front of the TV, you could use the play gym in both locations. And with the hub, which was never used before, the legs could rotate down into a stored position. So the only reason for this product, anyone could buy a regular play yard with a play gym or separately buy a mat with a play gym. This was the only product that combined them both. And as the judge found too, it's common sense, it's right on the package, showing all three positions of the accused products, where it's used with the play yard, the mat, and then in the stored position, you can see the person wheeling the product out of the house. So there was a lot of evidence on the value of the invention, which would have supported an even higher royalty rate than the jury awarded. And that's, I think, everything else is pretty well laid out, unless there are any other questions. Hearing none. Thank you. Thank you, Your Honors. Mr. Prasuniak, you've got some time left on rebuttal. Thank you, Your Honor. Mr. De Niro stated that the trial involved the word rotating and not moving. That argument was not presented in a police brief. And in fact, if one refers to Colcraft's answering brief, there's no discussion or quotations from testimony or closing argument where the patentee focused on the word rotating. In fact, again, the jury instructions is what controls here, and the jury could be expected to have followed the jury instructions. Mr. De Niro is very inaccurate in stating that or suggesting that the district court referred to a dictionary definition in stating or referring to movement. In fact, there is no dictionary definition that defines pivoting as merely movement about a fixed point. Mr. De Niro referred to a quarterback. Well, of course, a quarterback rotates his pivot foot around a fixed point, which is the ground. That is pivoting. Having a couple legs dangling by a flexible tether is not. Mr. De Niro stated that we did not ask for a re-argument. I'm sure he doesn't mind, but I think you keep calling him Mr. De Niro, and I think it's Mr. Niro. Yes, I'm sorry. I apologize. I'm showing my age. He's much better looking than me. Counsel asked why we didn't ask for a re-argument.           I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. The reasons for that are very narrow. Counsel also said that we agreed with the court in the first construction. That is not correct. Again, the court rendered its construction of the term pivoting to include movement. We were bound by that determination, so we did not have a basis for re-argument under the local rules. What we did is then added the additional limitations into the claim construction to make sure that we had the proper definition of pivoting that would have excluded the situation such as we found here. We certainly never agreed to the claim construction proposed by the court. I guess the topics of indirect infringement are sufficiently covered in the brief. As to the damages, first of all, we don't have infringing sales. The issue as to whether there was infringement, of course, is still open. The fact remains that the damages turned completely on the submission of the Graco settlement. Yet, for reasons explained in our opening brief and reply briefs, the Graco settlement was unreliable and could not be used. Colcraft admits that Graco knew nothing about the patent before it was sued and then it settled the case 11 weeks later without any discovery, without answering any complaint. Most importantly, Graco never paid any running royalty equal to 5%. The whole Graco settlement appears to be nothing more than an advantageous agreement whereby Graco paid whatever it paid and we don't know what it was, what could have been a small amount of money to get out of the lawsuit. They agreed to a 5% running royalty knowing that they would never have to pay. So, in any event, for that reason, we don't believe the Graco settlement is valid. We thank both sides. The case is submitted and that concludes our proceeding for this morning. The Honorable Court is adjourned until tomorrow morning at 10 a.m.